UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALI ABDULLA, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:19-cv-01393-GCS |
| | ) |
| AARON CAMPBELL | ) |
| and | ) |
| KYLE BRUMLEVE, | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

This matter is before the Court on Defendants' motion for summary judgment regarding the exhaustion of administrative remedies. (Doc. 55, 56, 74).[1] Specifically, Defendants argue that Plaintiff did not exhaust his administrative remedies as to Defendant Kyle Brumleve on any claim and that Plaintiff did not exhaust his administrative remedies as to Defendant Campbell regarding the claims in Counts 2 and 3.[2] Plaintiff Ali Abdulla opposes the motion. (Doc. 63). The Court held an evidentiary hearing on the motion on May 17, 2022 and took the matter under advisement. (Doc. 73).

---

[1] Along with the motion for summary judgment, Defendants filed the required Federal Rule of Civil Procedure 56 notice informing Abdulla of the consequences of failing to respond to the motion for summary judgment and what is required in responding to a motion for summary judgment. (Doc. 57).

[2] Defendant Campbell concedes Plaintiff exhausted administrative remedies as to the claim against him in Count 1.

Based on the reasons delineated below, the Court denies in part and grants in part the motion for summary judgment.

## FACTUAL BACKGROUND

On December 24, 2019, Abdulla, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Menard. He requests monetary damages. (Doc. 1).

Abdulla makes the following allegations. Abdulla was previously housed at Pinckneyville Correctional Center ("Pinckneyville). On February 8, 2018, Abdulla was transferred to Menard and was led to his segregation cell by Defendants Aaron Campbell and Kyle Brumleve. After being stripped searched, Abdulla was physically assaulted by Defendants while he was handcuffed. He sustained significant injuries including broken bones and could not walk for weeks. He also alleges that after the assault, Defendants placed him in a dirty cell with no soap, bedclothes, tissue or towels. He further contends that he was denied medical treatment for his injuries until more than a month later.

The Court conducted the required review of Abdulla's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 26). The August 25, 2021 Memorandum and Order allowed Abdulla to proceed with the following: an Eighth Amendment claim for excessive force against Defendants (Count 1); an Eighth Amendment claim for deliberate indifference to a

serious medical need against Defendants (Count 2); and an Eighth Amendment claim for conditions of confinement against Defendants (Count 3). *Id.*

The record reflects that Abdulla submitted at least 15 grievances from March 2018 to December 2018. *See* (Doc. 56-1, 56-2, 74). The potentially relevant grievances – those Abdulla submitted during the relevant time frame are attached as Exhibit A to Defendants' memorandum in support of summary judgment. (Doc. 56-1, 56-2). Most of these grievances are unrelated to the matter at hand and will not be addressed.[3] The record reflects three grievances which are relevant to the allegations in this complaint: grievance # 396-3-18; grievance # 490-3-18; and grievance # 359-3-18.[4]

On March 19, 2018, Abdulla filed grievance # 359-3-18 as an emergency. In this grievance, Abdulla complained about being attacked and about the lack of medical treatment from the facility for 41 days. Abdulla's relief requested the following: "I need and request medical attention immediately for the incident on 2/8/2018 by Officer Campbell and Officer Bromlee." On March 22, 2018, this grievance was deemed not an emergency. (Doc. 56-2, p. 64). The grievance was sent back to Abdulla on March 23, 2018, and Abdulla resubmitted the grievance which was received on March 29, 2018. (Doc. 74). On October 1, 2018, the Administrative Review Board ("ARB") denied the grievance

---

[3]  Exhibit A consists of grievances that Abdulla filed from February 2018 to April 2021. (Doc. 56-1, Doc. 56-2).

[4]  In his opposition, Abdulla also references the following irrelevant grievances: grievance # 360-3-18 which relates to law library legal mail; grievance # 357-3-18 which relates to shakedowns; and grievance # 358-3-18 which relates to missing property items. (Doc. 56-2, p. 72-75, 81-84, 85-88). Obviously, these grievances are not related to the allegations contained in the complaint or the claims that survived the screening Order.

finding it was appropriately addressed at the facility. Acting Director Baldwin concurred with the ARB on October 4, 2018. (Doc. 56-2, p. 62-65).

On March 27, 2018, Abdulla filed grievance # 490-3-18, which complained of the conditions of his cell. (Doc. 56-2, p. 68-11). In this grievance, he does not mention either Defendants in this grievance. However, he does mention that his galley officer, Officer Taylor denied him assistance. On June 5, 2018, the grievance officer found the issues moot. Further the grievance officer noted: "[o]ffender is reminded to follow proper grievance procedures and submit grievances in locked boxes." On June 7, 2018, the Chief Administrative Officer ("CAO") or designee concurred with the grievance officer. Abdulla signed his intent to appeal that decision on June 18, 2018. The ARB received the grievance on August 6, 2018. On August 15, 2018, the ARB issued its decision that it would not address the grievance as it received the grievance 30 days after the CAO's decision. (Doc. 56-2, p. 68-71).

On March 1, 2018, Abdulla filed grievance number 396-3-18(1) as an emergency. In this grievance, Abdulla complains that Officers Campbell and "Bromlee" attacked him on February 8, 2018. He also complains about the lack of medical treatment, but he does not claim Defendants denied him treatment. Further, this grievance does not mention the conditions of his cell. On March 23, 2018, the CAO deemed this grievance not an emergency. This grievance was marked as a duplicate issue of 359-3-18. On March 26, 2018, Abdulla filed grievance # 396-3-18(2). In this grievance, he complains about excessive force by Defendants and that he was denied proper medical care, but he does not allege that these Defendants denied him medical care. The ARB received these

grievances on May 15, 2018. The ARB did not rule on the merits of the grievance as they were not submitted in the timeframe outlined by Department Rule 504. (Doc. 56-2, 90-96).

At the evidentiary hearing held on May 17, 2022, the Court heard testimony from Evette Baker and Abdulla. (Doc. 73).

Evette Baker has been employed at Menard since 1996 and works in the grievance office. She testified regarding the grievance procedure process at Menard during the relevant time period. She also testified that there are lockboxes throughout the cell house that inmates place the grievances into and that the officers grab the lockboxes and take them to the grievance office. The officers do not have keys to the lockboxes; only the grievance office has the key. In segregation, the lockboxes are smaller and heavier. The officers take the lockbox to the inmates' cells, and the inmates place the grievances in the lockboxes. The officers do not have keys. Typically, inmates will get receipts for their grievances within 48 hours. If an inmate does not receive a receipt within 48 hours, the inmate should write another grievance. Ms. Baker also testified that the grievances have to go in the lockbox. If an inmate hands the grievance to the officer or places the grievance in the institutional mail, it is not properly filed. Baker testified that the CHAMPS system reflects that from March to December 2018 Abdulla filed at least 15 grievances and that most of them were fully exhausted at the facility level.

Abdulla testified that he has been in IDOC custody since 2009 and has been housed at various institutions including Menard, Pinckneyville, Lawrence Correctional Center, Stateville Correctional Center, and Pontiac Correctional Center. He testified that he was

aware of the grievance process at Menard and that he successfully filed grievances at Menard prior to 2018.

Abdulla maintains that personnel either lost or destroyed three to five of his grievances related to the allegations in this case. Abdulla testified that he did not have copies of any of the grievances that were handled in such a manner. Abdulla indicated that any serious grievance filed against staff would not be processed. Abdulla testified that he would give the grievances to an officer to put in the institution mail, give the grievances to a worker or give the grievances to another inmate to put in the lock box. He also testified that he would only make copies of these grievances or write a second grievance if he went to the law library. Abdulla conceded that grievance # 359-3-18, which is related to staff conduct, went through the grievance process.

In response to questions by the Court, Abdulla stated that he filed three to five grievances related to the allegations in this complaint that are missing from the record. However, when pressed for the specifics surrounding the contents of these grievances and the process that he followed in filing them, Abdulla could not provide the Court with any meaningful details. Abdulla also could not remember the names or descriptions of the officers to whom he had submitted the grievances.

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison

Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury, but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion."). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A prisoner cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Abdulla was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the

> names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the response of the CAO, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination

of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

If an inmate submits a grievance but never receives a response, then his attempts at exhaustion will be deemed thwarted, and he will be allowed to proceed with his lawsuit. *See, e.g.*, *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809 (indicating that a remedy

can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

## ANALYSIS

Defendants contend that they are entitled to summary judgment as Abdulla did not exhaust his administrative remedies prior to filing his complaint as to any of his claims against Defendant Brumleve and as to his claims in Count 2 and 3 against Defendant Campbell. Abdulla counters that he submitted three to five grievances regarding the incidents in the complaint and that he did not get a response because his grievances were either destroyed or not processed.

First, the Court addresses grievance # 359-3-18 dated on March 19, 2018. As to this grievance, Defendants maintain that it did not mention or describe Defendant Brumleve nor did it allege that Defendant Campbell denied Abdulla medical care. It also did not contain any allegations regarding the conditions of Abdulla's cell. As noted by Defendants, this grievance did allege that Defendant Campbell used excessive force against Abdulla on February 8, 2018. The grievance also alleged that Abdulla had not received appropriate medical care for 41 days. However, a thorough review of the grievances reveals that Abdulla specifically named Defendant Brumleve in the text of his grievance stating: "immediate firing of Officer Campbell Officer & Bromlee those were the leaders of the Police Beating that happened on 2/08/2018." Further, his request for relief in this grievance states: "I need and request medical attention for the incident on 2/8/2018 by Officer Campbell and Officer Bromlee." (Doc. 56-2, p. 62-65). Clearly, this mirrors the conduct alleged regarding Abdulla's claims of excessive force. Thus,

construing the evidence in the light most favorable to Abdulla, the Court finds that grievance # 359-3-18, did exhaust administrative remedies for his claim of excessive force against Defendant Brumleve in Count 1.

However, the Court finds that this grievance cannot serve to exhaust administrative remedies regarding the claims against Defendants in Counts 2 and 3. While the grievance did allege a lack of medical care, it did not state that Defendants Campbell and Brumleve were the individuals that denied him such care. In fact, the grievance specifically reads: "I need emergency intensive care but this facility never treated me and is waiting for the injuries to disappear." (Doc. 56-2, p. 64-65). Based on this grievance, it appears that Abdulla's complaint was with medical staff and not with the officers who had allegedly assaulted him. Likewise, this grievance did not contain allegations of the conditions of his cell on February 8, 2018.

Next, the Court addresses grievance # 490-3-18 dated March 27, 2018, in which Abdulla complained about the conditions of his confinement. (Doc. 56-2, p. 68-71). This grievance did not mention the conduct of Defendant Campbell and Defendant Brumleve, and it did not describe either Defendant Campbell or Defendant Brumleve. Instead, the grievance states that he was denied assistance by his gallery officer Corrections Officer Taylor. Specifically, the grievance states: "[e]ven though I did ask my gallery officer C/O Taylor, I was promised, but lies. I was ignored to . . . ." *Id.* at p. 70-71. Clearly, this grievance did not exhaust Abdulla's administrative remedies as to the claims against these Defendants in Count 3. Assuming *arguendo* that this grievance did include conduct or allegations regarding the Defendants, this grievance still would not have exhausted

his administrative remedies regarding the claims in Count 3 because the ARB did not address the merits of this grievance as it was untimely received. *Id*. at p. 68.

Lastly, the Court address grievance 396-3-18(1) and (2) in which Abdulla grieved excessive force against the Defendants on February 8, 2018 and the lack of medical treatment. But, these grievances never mentioned conditions of confinement. And, as stated previously, Abdulla's complaints about the lack of medical treatment were not directed towards the Defendants. Thus, these grievances cannot serve to exhaust his administrative remedies as to the medical claims in Count 2 against the Defendants. Additionally, these grievances cannot serve to exhaust the administrative remedies as to the conditions of confinement claims in Count 3 against the Defendants. While the grievances did reference the allegations of excessive force against these Defendants, the ARB did not rule on the merits of these grievances, and it cannot serve to exhaust administrative remedies as to the excessive force claims in Count 1.

Moreover, as to Abdulla's assertions that his three to five grievances were destroyed or not processed, the Court finds his testimony to be unpersuasive in this regard. First, Abdulla could not describe in any detail any of the grievances that he claimed were lost or destroyed. For example, Abdulla could not identify the date of the grievances or the individuals to whom he had submitted the grievances. And, when pressed further, Abdulla could not even describe the individuals to whom he had submitted the grievances. Second, Abdulla does not have copies of the grievances that he claims were destroyed or not processed. In other cases decided by this Court, handwritten copies of relevant grievances have served to corroborate a plaintiff's

assertions. Nevertheless, Abdulla has no evidence whatsoever to support his assertions, other than his own self-serving testimony that the grievances were destroyed or refused to be processed. Furthermore, it seems implausible that the grievances filed by Abdulla were destroyed or that he was prevented from filing the grievances when so many of his other grievances were received and answered. The record is replete with instances where Abdulla was able to use the grievance process as to issues in this case and as to other issues not relevant to this case. And, even if there were grievances that were not processed, the evidence shows that Abdulla did not follow the required procedures for filing the grievances. Abdulla testified that he would give the grievances to an officer to put in the institution mail, give the grievances to a worker or give the grievances to another inmate to put in the lock box. This is not consistent with the procedure established at Menard for inmates to place the grievances directly in the lockbox. Thus, the Court does not find Abdulla credible regarding the alleged destruction of his grievances and his inability to file grievances, as the record clearly indicates otherwise.

## CONCLUSION

Based on the foregoing, Defendants' summary judgment motion as to exhaustion of administrative remedies is **DENIED in part** and **GRANTED in part**. The Court **DENIES** the motion as to the claim against Defendant Brumleve in Count 1 and **GRANTS** the motion as to the claims against Defendants in Counts 2 and 3. Thus, the Court **DISMISSES without prejudice** claims against Defendants Campbell and Brumleve in Counts 2 and 3 and **DIRECTS** the Clerk of the Court to enter judgment at

the end of the case. The case is proceeding as to the claims for excessive force against Defendants Campbell and Brumleve in Count 1.

    **IT IS SO ORDERED.**

    **DATED: May 24, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.05.24 11:59:58 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**