UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALI ABDULLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-01393-GCS |
| | ) |
| AARON CAMPBELL | ) |
| and | ) |
| KYLE BRUMLEVE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

This matter is before the Court on Defendants' motion for summary judgment. (Doc. 110, 131).[1] Specifically, Defendants argue that Plaintiff's claims fail as a matter of law as the claims are not supported by the evidence, and the claims are so outrageous that no reasonable jury could believe Plaintiff. After many extensions (five in total), Plaintiff Ali Abdulla filed an opposition to the motion. (Doc. 130). Based on the reasons delineated below, the Court denies the motion for summary judgment.

On December 24, 2019, Plaintiff, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"),

---

[1] Along with the motion for summary judgment, Defendants filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to a motion for summary judgment. (Doc. 111).

brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Menard. He requests monetary damages. (Doc. 1).

In his complaint, Plaintiff alleges he was previously housed at Pinckneyville Correctional Center ("Pinckneyville). On February 8, 2018, Plaintiff was transferred to Menard and was led to his segregation cell by Defendants Aaron Campbell and Kyle Brumleve. After being stripped searched, Plaintiff was physically assaulted by Defendants while he was handcuffed. He sustained significant injuries including broken bones, and he could not walk for weeks. He also alleges that after the assault, Defendants placed him in a dirty cell with no soap, bed clothes, tissue, or towels. He further contends that he was denied medical treatment for his injuries until more than a month later.

The Court conducted the required review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 36). The Court's Screening Order allowed Plaintiff to proceed with the following: an Eighth Amendment claim for excessive force (Count 1); an Eighth Amendment claim for deliberate indifference to a serious medical need (Count 2); and an Eighth Amendment claim for conditions of confinement (Count 3). *Id.*

On May 24, 2022, the Court granted in part and denied in part Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 76). The Court dismissed without prejudice Plaintiff's claims against Defendants in Counts 2 and 3. *Id.* Remaining in the case are the claims against Defendants in Count 1, the excessive force claim. *Id.* Thus, the Court will limit its analysis to the excessive force claim against these two Defendants.

## FACTS[2]

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

*Agreed to Facts*

During the relevant time, Plaintiff was incarcerated within the IDOC and housed at Menard. Also during this time, Defendants Campbell and Brumleve were employed by the IDOC as Correctional Officers at Menard.

Plaintiff does not have any medical training.

Plaintiff testified that he was beat up by correctional officers at Pinckneyville on February 8, 2018. He also alleges that he was hit in the jaw, back, and head. Plaintiff further claims that while handcuffed at Pinckneyville, officers struck him between five to seven times. Plaintiff testified: "I believe there was kind of laceration on my forehead or something in my face, forehead, somewhere." (Doc. 110-1, p. 9). That same day, Plaintiff was transferred from Pinckneyville to Menard at 10:00 a.m.

The record contains an institutional photograph of Plaintiff taken at Menard with a date of February 9, 2018.

Plaintiff denies being seen by medical upon arriving at Menard; he claims that he did not see medical until weeks later.

---

[2] Some of the facts have been agreed to by the parties, some facts have been taken from Plaintiff's deposition, and some facts have been taken from the records submitted by the parties.

On March 8, 2018, Plaintiff was seen for his annual medical visit. On March 12, 2018, Plaintiff was assessed again by the nurse practitioner and referred to the medical doctor. During this visit Plaintiff complained of being "beat up" and having pain to the left side of his head, ribs, back and nose. The medical records do not indicate who assaulted Plaintiff.

Plaintiff was seen by medical on March 17, 2018, and x-rays were ordered. On March 22, 2018, x-rays were completed, and Plaintiff's outpatient progress notes contain complaints of lower back pain radiating to the right lateral calf. That same day, Plaintiff was prescribed physical therapy, *i.e.*, once a week for four weeks.

*Plaintiff's Deposition Testimony*

When Plaintiff arrived at Menard, he was met by Defendants Campbell and Brumleve, and they indicated they knew Plaintiff. (Doc. 110-1, p. 10; Doc. 130, p. 97).

Plaintiff testified that 48 correctional officers took turns hitting him all over and that Defendants gathered the correctional officers. (Doc. 110-1, p. 12; Doc. 130, p. 33). As to Defendants' conduct, Plaintiff testified that Defendant Campbell hit him in the head with a fist, and Defendant Brumleve hit him on the left side. Plaintiff then bent down wherein Defendant Brumleve hit him again on the back of his head on the left side. Plaintiff then fell. Thereafter, Defendant Campbell tried to break his ribs by inserting a slip under his chest and hitting him on the chest. Plaintiff also claims that Defendant Brumleve was "going for [his] spinal cord" by kicking him. Defendant Brumleve further hit Plaintiff with a radio on the head, the forehead, top left side, and in the back of the

head. (Doc. 110-1, p. 13, 14; Doc. 130, p. 98). Plaintiff testified that this took place inside a holding cell in the gallery. (Doc. 110-1, p. 15; Doc. 130, p. 98).

Plaintiff further testified that he was not seen by medical for "a lot of days," that he was not seen by medical for an intake at Menard, and that it took 44 days to get the x-rays. He contends that he asked for medical help all the time by talking to the gallery officer and by filing kites and request slips. (Doc. 110-1, p. 17-19; Doc. 130, p. 99).

*Medical Records*

Defendants provided Plaintiff's medical records from February 8, 2018, through October 18, 2016. (Doc. 110-4).[3] Plaintiff's February 8, 2018, Health Status Transfer Summary from Pinckneyville to Menard notes states: "STAFF ASSUALT, physical appearance/behavior normal." *Id.* at p. 1. The Summary also notes that Plaintiff had no subjective complaints. *Id.* Another medical record on February 9, 2018, reveals that Plaintiff was assessed for an assault with injury to his right pointer finger, a dime size break to the skin, and minimal bleeding. *Id.* at p. 3-4. On February 11, 2018, Plaintiff was given an injection to the left forearm. *Id.* at p. 5. On March 1, 2018, Plaintiff was seen for complaints of muscle spasms and low back pain that were ongoing for about a year. *Id.* at p. 6-7. On March 12, 2018, Plaintiff's blood labs were performed. *Id.* at p. 8. That same day, Plaintiff's records note complaints of constant pain in the ribs, back, head, and nose since February 8, 2018. The notes further state that there are no observations related to body part affected or signs of discomfort. *Id.* at p. 9. About 5 days later, Plaintiff was seen

---

[3]    Plaintiff denies the content of most of these records.

again, wherein he complained about pain in his head, back, and nose. He further stated, "I was beat up 2/8/18." *Id*. at p. 10. X-rays were ordered. On March 22, 2018, there is a note indicating that Plaintiff's x-rays were completed. Also, on March 22, 2018, Plaintiff was evaluated for physical therapy, and physical therapy was ordered 1 time a week for 4 weeks. *Id*. at p. 11. From March 30, 2018, to April 23, 2018, the records reveal that Plaintiff refused physical therapy on March 30, 2018, on April 13, and on April 23, 2018. *Id.* at p. 12. On April 6, 2018, Plaintiff struggled to do the exercises and asked for the medicine that had been canceled. *Id*. Lastly, on October 18, 2018, Plaintiff saw medical for a general visit. *Id*. at p. 13.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the

facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## DISCUSSION

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *See McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). An officer's use of physical force against an inmate may give rise to an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley*, 475 U.S. at 321. These factors are sometimes referred to as the "*Whitley* factors." When assessing whether force is necessary, the Court considers "the

Page 7 of 11

threat to the safety of the officers and the threat to the maintenance of good order and discipline in the institution[.]" *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain . . . ." *Whitley*, 475 U.S. at 322.

Defendants argue they are entitled to summary judgment because Plaintiff's claims are not unsupported by the evidence, and there is no evidence of any harm to Plaintiff. Specifically, Defendants contend Plaintiff's claims are so outrageous and unsubstantiated and that no reasonable jury could believe Plaintiff's version of events. Defendants further maintain that Plaintiff's medical records and the February 9, 2018, institutional photograph do not show any beatings, assaults, or other markings as alleged by Plaintiff. Additionally, Defendants argue that Plaintiff's allegations that 48 correctional officers were involved in the assault make his story unbelievable and implausible. However, Plaintiff testified that the assault *did* occur, and a party's own deposition testimony may be used to defeat a motion for summary judgment, if it is based on personal knowledge. *See Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664-665 (7th Cir. 2006). *See also Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (stating that "[p]rovided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set[s] forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.").

Defendants essentially argue that the record contains evidence to refute Plaintiff's allegations, which is more persuasive than Plaintiff's story. Of course, absent extreme circumstances, this is not a proper inquiry for the Court at summary judgment. *See, e.g., United States v. Funds in Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120.00)*, 730 F.3d 711, 718-719 (7th Cir. 2013) (stating that "[p]erhaps the government's evidence – composed, as it is, of official tax documents— seemed weightier than Marrocco's affidavit testimony. But, as stated above, such determinations are properly left to the trier of fact."); *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) (stating that "[s]ometimes the heftiness of the evidence on one side, or the credulity of a particular litigant makes our task of suspending factual and credibility determinations difficult, but whatever the difficulty, we must stick to the task on summary judgment . . . and avoid the temptation to decide which party's version of the facts is more likely true.").

The Court will make credibility determinations on summary judgment only in "extreme cases" where the evidence is "not just implausible, but utterly implausible in light of all relevant circumstances," such "that no rational person could believe it[.]" *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). For instance, "[i]ncredible testimony that describes an impossibility" or is "contrary to a law of nature" must be ignored. *Harris v. Schaller*, No. 19-3124, 830 Fed. Appx. 787, 788-789 (7th Cir. Dec. 9, 2020) (disregarding a plaintiff's declaration where it was based on an impossibility that two inmates in two different prisons possessed the same document at the same time). *See also Machinists Dist. 10 v. GE Medical Systems, LLC*, No. 07-C-364, 2008 WL 4186852, at *7 (E.D. Wisc. Sept. 10,

2008) (finding it "unbelievable" that a person was unaware that she hit another vehicle where the other vehicle's bumper was ripped off, the person immediately and readily admitted fault after she was confronted, and her explanations as to why she was unaware of hitting the vehicle were "shifting").[4]

Plaintiff's version of events is not so utterly implausible or internally inconsistent that no reasonable jury could find in his favor. The records provide an example of a "he said she said case." On the one hand, the records support Defendants' position that Plaintiff did not make complaints about the alleged assault and that the institutional photograph does not show injuries to the extent alleged by Plaintiff. On the other hand, medical records contain notes wherein Plaintiff stated that he complained of ribs, back, head, and nose pain since February 8, 2018. Plaintiff further stated that "[he] was beat up 2/8/18." Additionally, Plaintiff attached two affidavits from fellow inmates dated March 27, 2018, and March 19, 2018, who were housed near Plaintiff at the time of and after the

---

[4] There are cases wherein courts have dismissed the plaintiffs' claims as frivolous. *See Sakovich v. Kankakee*, 130 F.R.D. 394 (C.D. Ill. 1990); *Besecker v. Boyl*, No. 92-2540, 9 F.3d 112 (7th Cir. Oct. 6, 1993) (Table) (unpublished); *Frey v. Board of Regents Univ. of Wisconsin System*, No. 95 C 4996, 1995 WL 557446 (N.D. Ill. Sept. 19, 1995); *McCorkle v. Ameritech*, No. 93 C 7353, 1993 WL 524703 (N.D. Ill. Dec. 13, 1993); *Minnis v. Much Shelist Freed Denenberg & Ament, P.C.*, 3 F.Supp.2d 877, 886 (N.D. Ill. 1997). These cases involved "irrational," "fantastic," "delusional," "incredible," and "frivolous" claims, such as: healthcare providers placing transistors in the plaintiff's teeth to eavesdrop on conversations and performing procedures so they could read plaintiff's thoughts (*Sakovich*); everyone the plaintiff came into contact with being involved in a conspiracy against him (*Besecker*); federal police officials, local and state police agencies, and a number of University of Wisconsin officials being involved in a widespread, international conspiracy and coverup in which "Japanese gangsters" forced female participants of an educational program into prostitution (*Frey*); and an employer using hypnotic mind control, placing "electronic receivers" into employees' sinuses and rectums, employing gangs and using bad body odor to harass employees, committing genocide, and threatening the plaintiff "into an[ ] old lesbian" (*McCorkle*). Plaintiff's allegations in the instant matter do not rise to the level in these cases as to warrant dismissal.

alleged assault. These affidavits indicate that Plaintiff was moaning from pain at night and that he did not get medical care for about a month. (Doc. 130, p. 85-87). While these affidavits do not address the alleged excessive force used by Defendants on Plaintiff, they do tend to support Plaintiff's allegations that he did not see medical upon arriving at Menard and did not see medical for about month thereafter. These discrepancies in the record can be explored further through cross examination, and these facts and issues must be decided by a jury. Viewing the record in the light most favorable to Plaintiff, the undersigned finds that Defendants Campbell and Brumleve are not entitled to summary judgment on Plaintiff's excessive force claims against them.

## CONCLUSION

Accordingly, the Court **DENIES** Defendants' motion for summary judgment. (Doc. 110). The Court **DIRECTS** the Clerk of the Court to set this matter for status conference to discuss settlement and/or potential trial dates.

**IT IS SO ORDERED.**

**DATED: March 7, 2025.**

Digitally signed by Judge Sison
Date: 2025.03.07 14:33:52 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**